UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| DANIEL PUCKET, in his own capacity; AMY PUCKET, in her own capacity; LUKE PUCKET, by and through his parents and guardians, Daniel and Amy Pucket; BENJAMIN PUCKET, by and through his parents and guardians, Daniel and Amy Pucket; JIM WILHELM, in his own capacity; DORIS WILHELM, in her own capacity; and JAMIE WILHELM, by and through her parents and guardians, Jim and Doris Wilhelm. )<br><br>Plaintiffs, )<br><br>vs. )<br><br>MICHAEL ROUNDS, in his official capacity as Governor of South Dakota; LAWRENCE LONG, in his official capacity as Attorney General of South Dakota; MARK BARNETT, in his official capacity as Chief Deputy Attorney General of South Dakota; HOT SPRINGS SCHOOL DISTRICT NO 23-2; and its SCHOOL BOARD, )<br><br>Defendants. ) | Civ.  03-5033-KES<br><br><br>ORDER DENYING MOTION TO HOLD IN ABEYANCE, GRANTING PLAINTIFFS' MOTION FOR VOLUNTARY DISMISSAL, DENYING STATE'S MOTION TO DISMISS OR JUDGMENT ON THE PLEADINGS, AND GRANTING IN PART AND DENYING IN PART SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiffs filed a claim under 42 U.S.C. § 1983 against Governor Michael

Rounds, Attorney General Lawrence Long, and Chief Deputy Attorney General

Mark Barnett, all in their official capacity (collectively referred to as the State)

and the Hot Springs School District No. 23-2 and its School Board (collectively

referred to as the School District).  The State moves for dismissal, or alternatively, for judgment on the pleadings.  (Docket 52).  In a separate motion, the School District moves for summary judgment.  (Docket 49-1).  The State joins the School District's motion.  (Docket 54).  Plaintiffs move to voluntarily dismiss the State.  (Docket 104).  Finally, the State and the School District collectively move to hold the court's ruling on the above motions in abeyance.  (Docket 107).

## BACKGROUND

Plaintiffs Luke Pucket (Luke) and Benjamin Pucket (Benjamin) (collectively referred to as the Pucket boys) are children who attended Bethesda Lutheran School (Bethesda), a sectarian school located within the Hot Springs School District, during the 2002-2003 school year.  Luke graduated from Bethesda in the spring of 2003.  (Docket 82-1, 85).  Benjamin graduated from Bethesda in the spring of 2005.  (Docket 82-1, 85).  Plaintiffs Daniel Pucket and Amy Pucket (collectively referred to as the Pucket parents) are the Pucket boys' parents.  (Docket 82-1, 85).  The Pucket parents also have a daughter S.P. who currently attends Bethesda and rides a School District bus.  (Docket 82-1, 85).

Plaintiff Jamie Wilhelm (Jamie) is also a child who attended Bethesda during the 2002-2003 school year.  She graduated from Bethesda in the

2

spring of 2004.  (Docket 82-1).  Plaintiffs Jim Wilhelm and Doris Wilhelm are her parents.

Prior to the 2002-2003 school year, School District provided bus transportation to all pre-college students residing in the Hot Springs School District, including those that attended Bethesda.  (Docket 1, 13).  School District only picked up Bethesda students who resided along existing routes. (Docket 1, 13).

In July of 2002, School District decided to ban the busing of Bethesda students.  (Docket 82-1, 85).  This prevented Luke, Benjamin, and Jamie from riding School District's buses to school for most of the 2002-2003 school year. (Docket 84).  After School District banned busing, Dan Pucket drove the Pucket boys to school.  (Docket 82-1, 85).

There is a factual dispute over what caused School District to ban busing.  School District contends that it terminated busing because its insurance provider threatened to terminate its liability insurance coverage if School District bused Bethesda students in violation of state law.  (Docket 59). Plaintiffs contest whether the potential loss of insurance was School District's true motivation for terminating busing.  (Docket 82-1).  Additionally, the parties dispute what motivated School District to reinstate busing in May of 2003.  (Docket 82-1).

The following is not disputed.  On October 31, 2002, School District requested a formal opinion by the S.D. Attorney General on whether busing Bethesda students violated state law.  (Docket 1, 13).  The Attorney General issued a letter on November 6, 2002, and directed School District to S.D. Att'y Gen. Op. 92-04, which opined that providing busing to students of a sectarian school would violate article VI, section 3, and article VIII, section 16, of the S.D. Constitution (collectively referred to as the provisions of the S.D. Constitution) (Docket 82-4, at 12, 16).  Following receipt of this letter, School District officially prohibited the busing of Bethesda students by passing a motion at the Hot Springs Board of Education meeting held on December 9, 2002.  (Docket 1, 13).

On February 28, 2003, anticipating enactment of SDCL 13-29-1.2, School District's insurance provider sent an email to School District stating that busing Bethesda students will no longer have any effect on School District's liability insurance.  (Docket 82-4, at 37).  On March 3, 2003, SDCL 13-29-1.2 was enacted into law, which provides:

> School districts may provide transportation to nonpublic school students if no additional public funds are expended to provide the transportation.  No school district, however, is required under this section to provide transportation to nonpublic school students.  This section does not affect the transportation of any eligible student pursuant to an individualized education plan.

The bill enacting SDCL 13-29-1.2 unanimously passed both houses of the South Dakota legislature.  (Docket 82-4, at 39).

4

On April 23, 2003, plaintiffs filed a complaint alleging violation of 42

U.S.C. § 1983 for deprivation of busing for Bethesda students.[1]  School

District reinstated busing for Bethesda students on May 16, 2003.  (Docket

82-1).

## DISCUSSION

## I.    Motion to Hold in Abeyance

As a preliminary matter, the court must rule on State's and School

District's joint motion (Docket 107) requesting that the court hold in abeyance

its ruling on both State's motion to dismiss or for judgment on the pleadings

and School District's motion for summary judgment until briefing and

arguments are completed on two other motions: (1) plaintiffs' motion to

voluntarily dismiss State, and (2) a second summary judgment motion filed by

School District on December 30, 2005.  State and School District contend that

all four of the above motions involve interrelated issues of party standing, and

as thus, judicial economy warrants waiting to rule on all the motions at the

same time.

The portion of the motion for abeyance requesting the court to stay

ruling until completion of argument on plaintiffs' motion for voluntary

---

[1] Plaintiffs allege that the School District and the State violated the First and Fourteenth Amendments of the U.S. Constitution by depriving them of equal protection, by infringing upon their right to free exercise of religion, by infringing upon their right to free speech, and by unconstitutionally establishing religion. (Docket 1).

dismissal is moot, and thus denied.  Briefing is complete on plaintiffs' motion for voluntary dismissal, and oral argument was held on January 5, 2006. Furthermore, the court rules on plaintiffs' motion for voluntary dismissal below.

As for the other portion of defendants' motion for abeyance, it is also denied.  Plaintiffs object to this portion.  The court has reviewed School District's second motion for summary judgment and finds that it involves different legal and factual issues.  Accordingly, no good cause exists for the court staying its ruling on the other pending motions.  Accordingly, State's and School District's joint motion to hold ruling in abeyance is denied in its entirety.

## II.      Motion for Voluntary Dismissal

Plaintiffs move to voluntarily dismiss their claims against State pursuant to Fed. R. Civ. 41(a)(2).  Plaintiffs argue that State has changed its position pursuant to SDCL 13-29-1.2, and has stated under oath that it cannot and will not prohibit the busing of Bethesda students.  Plaintiffs acknowledge that this grants them the equitable relief that they sought from State, and thus, they seek to voluntarily dismiss their claim.

As a general matter, State does not object to having the claims against it dismissed.  State does object, however, to complete dismissal of the S.D. Attorney General from the suit if plaintiffs intend to contest the

constitutionality of the provisions of the S.D. Constitution in this case.  SDCL 15-6-24(c) provides:

> When the constitutionality of an act of the Legislature affecting the public interest is drawn in question in any action to which the state or an officer, agency, or employee of the state is not a party, the party asserting the unconstitutionality of the act shall notify the attorney general thereof within such time as to afford him the opportunity to intervene.

Pursuant to SDCL 15-6-24(c), the S.D. Attorney General has a right to intervene in cases involving the constitutionality of state constitution provisions.  Cf. In re Estate of Holan, 621 N.W.2d 588, 591 (S.D. 2001).

At oral argument, plaintiffs represented that they still intend to contest the constitutionality of the provisions of the S.D. Constitution, and thus, the Attorney General has a right to intervene.  To alleviate this concern, the court grants plaintiffs' motion for voluntary dismissal and reassigns defendant Long and defendant Barnett as defendant intervenors.  At oral argument, both plaintiffs and State agreed to this course of action.

## III.    Motion to Dismiss or for Judgment on the Pleadings

State's motion to dismiss contends that plaintiffs lack Article III standing to assert claims against State because their claims are moot.  Alternatively, State seeks judgment on the pleadings contending that the provisions of the S.D. Constitution do not violate the U.S. Constitution as a matter of law.

7

**A.    Motion to Dismiss**

State argues that the plaintiffs lack standing to assert a claim against State because the court can afford no relief for those claims.  This portion of State's argument was rendered moot by the court's granting of plaintiffs' motion for voluntary dismissal because plaintiffs are no longer asserting claims against State.

**B.    Motion for Judgment on the Pleadings**

Alternatively, State seeks judgment based on the pleadings that the provisions of the S.D. Constitution are constitutional as a matter of law.  Fed. R. Civ. P. 12(c) governs a motion for judgment on the pleadings.  Judgment on the pleadings is proper if no material issue of fact remains and the moving party is entitled to judgment as a matter of law.  Faibisch v. University of Minn., 304 F.3d 797, 803 (8th Cir. 2002).  In ruling on a motion on the pleadings, the court "'accept[s] as true all facts pleaded by the non-moving party and grant[s] all reasonable inferences in favor of the non-moving party.'" Syverson v. FirePond, Inc., 383 F.3d 745, 749 (8th Cir. 2004) (quoting United States v. Any & All Radio Station Transmission Equip, 207 F.3d 458, 462 (8th Cir. 2000)).

The court considered no matters outside the pleadings in this motion and refuses to do so; thus, the motion is governed by Rule 12(c) rather than Rule 56.  See Fed. R. Civ. P. 12(c).  At this juncture in the case, the court

refrains from reaching the constitutional issues raised by the State because the court may be able to resolve the case on narrower grounds, thereby avoiding the constitutional issue.  See United States v. Allen, 406 F.3d 940, 946 (8th Cir. 2005) ("When we are confronted with several possible grounds for deciding a case, any of which would lead to the same result, we choose the narrowest ground in order to avoid unnecessary adjudication of constitutional issues.").  See also Schanou v. Lancaster County Sch. Dist. No. 160, 62 F.3d 1040, 1042 n.1 (8th Cir. 1995).  The multitude of constitutional issues implicated by this case should not be decided in a piecemeal fashion because it risks reaching some of the constitutional issues unnecessarily.  See Allen, 406 F.3d at 946.  Instead, the court finds it wise to consider all the constitutional and non-constitutional issues contemporaneously in one dispositive motion.

## IV.   Summary Judgment Motion

Plaintiffs seek injunctive relief, declaratory relief, and compensatory damages from School District for its allegedly unconstitutional deprivation of busing.  School District argues that plaintiffs' claims are moot because all the named student-plaintiffs who previously attended Bethesda have graduated and because School District has reinstated busing for Bethesda students.

### A.    Standard of Review

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56. Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.  The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record.  Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980).  The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or

10

otherwise showing that a genuine issue exists.  Forrest v. Kraft Foods, Inc.,
285 F.3d 688, 691 (8th Cir. 2002).

**B.     Graduation of the Named Student—Plaintiffs**

All of the student-plaintiffs who were attending Bethesda when this
action commenced have since graduated and will never again attend
Bethesda.  Based thereon, School District contends that the case is moot and
the court should dismiss all plaintiffs' claims.  (Docket 49-1).  For analysis
purposes, the court will separate plaintiffs into three groups: (1) The Pucket
boys; (2) the Pucket parents; and (3) Jim Wilhelm, Doris Wilhem, and Jamie
Wilhelm.

**1.     The Pucket Boys**

The School District contends that the Pucket boys' graduation mooted
their claims.  The Pucket boys are seeking an injunction prohibiting School
District from infringing upon their constitutional rights by denying busing
services.  They are also seeking compensatory damages and declaratory relief.

The "case and controversy" requirement of Article III of the U.S.
Constitution requires that the party invoking federal jurisdiction must have
standing.  Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County, 115
F.3d 1372, 1378 (8th Cir. 1997). "To establish Article III standing, a [party] has
the burden of proving: (1) that he or she suffered an 'injury-in-fact,' (2) a
causal relationship between the injury and the challenged conduct, and

11

(3) that the injury likely will be redressed by a favorable decision." <u>Steger v. Franco, Inc.</u>, 228 F.3d 889, 893 (8th Cir. 2000).  As a component of Article III standing,  "there must be a definite and concrete controversy involving adverse legal interests at every stage in the litigation." <u>McFarlin v. Newport Special Sch. Dist.</u>, 980 F.2d 1208, 1211 (8th Cir. 1992).  "'When, during the course of litigation, the issues presented in a case lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief, the case is considered moot.'" <u>Ali v. Cangemi</u>, 419 F.3d 722, 723 (8th Cir. 2005) (en banc) (quoting <u>Beck ex rel. Beck v. Mo. State High Sch. Activities Ass'n</u>, 18 F.3d 604, 605 (8th Cir. 1994)) (omission in original).  Mootness is subject to two narrow exceptions: (1) the voluntary cessation doctrine; and (2) the capable of repetition yet evading review doctrine.  <u>See</u> <u>Iowa Prot. & Advocacy Servs. v. Tanager, Inc.</u>, 427 F.3d 541, 543-44 (8th Cir. 2005).

According to Article III standing requirements, "a plaintiff seeking prospective relief against future conduct of defendants who caused injury in the past must show that [he] faces 'a real and immediate threat that [he] would again suffer similar injury in the future.'" <u>Mosby v. Ligon</u>, 418 F.3d 927, 933 (8th Cir. 2005) (quoting <u>Park v. Forest Serv. of the United States</u>, 205 F.3d 1034, 1037 (8th Cir. 2000)).  Past injury "'does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied

by any continuing, present adverse effects.'" <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 102, 103 S. Ct. 1660, 1666, 75 L. Ed. 2d 675 (1983) (quoting <u>O'Shea v. Littleton</u>, 414 U.S. 488, 493, 94 S. Ct. 669, 674, 38 L. Ed. 2d 674 (1974)).

The Pucket boys lack standing to seek injunctive relief because they are no longer subject to School District's busing policy, and thus, they do not face a "real or immediate threat of future injury." <u>See</u> <u>Mosby</u>, 418 F.3d at 933. After they graduated from Bethesda, their claims for injunctive relief became moot. <u>See</u> <u>McFarlin</u>, 980 F.2d at 1210; <u>Steele v. Van Buren Pub. Sch. Dist.</u>, 845 F.2d 1492, 1495 (8th Cir. 1988). In <u>McFarlin</u>, a high-school senior who was banned from her school's basketball program sued the school district and sought an injunction compelling it to permit her to play basketball. <u>Id.</u> at 1210. The Court of Appeals for the Eighth Circuit found that the student's claim for injunctive relief was moot because she had since graduated from high school. Similarly, the Pucket boys' graduation mooted their claims for injunctive relief.

An exception to the mootness doctrine has been recognized for cases capable of repetition yet evading review. This doctrine, however, does not preserve the Pucket boys' claims for injunctive relief.

> To come within this narrow exception, the following two elements must exist: (1) there must be a reasonable expectation that the same complaining party will be subjected to the same action again, and (2) the challenged action must be of a duration too short to be fully litigated before becoming moot.

<u>Iowa Prot. & Advocacy Servs. v. Tanager, Inc.</u>, 427 F.3d 541, 544 (8th Cir. 2005).  For an injury to be capable of repetition, "there must be a reasonable expectation that the same complaining party will be subjected to the same action again . . . ."  <u>Id.</u>  The exception "does not apply when the issue might recur in someone else's case, but not the plaintiff's."  <u>McFarlin</u>, 980 F.2d at 1211.  In <u>McFarlin</u>, the court refused to apply the capable of repetition yet evading review exception because the student-plaintiff had graduated, which prevented the school district from ever infringing upon <u>her</u> civil rights again.  <u>See</u> <u>id.</u>  Accordingly, the injury was not capable of repetition for the particular plaintiff seeking relief—the student.

  <u>McFarlin</u> is factually indistinguishable.  Here, both the Pucket boys have graduated from Bethesda.  They will never again be subject to School District's policy of busing Bethesda students, meaning their injuries are not capable of repetition.  Based on the foregoing, the court finds the Pucket boys' claims for injunctive relief are moot, and School District is entitled to summary judgment.

  The Pucket boys also seek compensatory damages and declaratory relief.  (Docket 1).  A legitimate, non-speculative claim for compensatory damages is not mooted by a change in circumstances, even if the change moots a claim for injunctive relief.  <u>See</u> <u>McFarlin</u>, 980 F.2d at 1211.  Additionally, a claim for nominal damages prevents a change in

circumstances from making a case moot.  Doe v. Delie, 257 F.3d 309, 314 (3d Cir. 2001); Kuhlmeier v. Hazelwood Sch. Dist, 596 F. Supp. 1422, 1427 (E.D. Mo. 1984), rev'd on other grounds, 795 F.2d 1368 (8th Cir. 1986), rev'd, 484 U.S. 260, 108 S. Ct. 562, 98 L. Ed. 2d 592 (1988); see also 13A Charles Alan Wright, et al., Federal Practice and Procedure § 3533.3 (2d ed. 1984).  A claim for damages also will prevent a claim for declaratory relief from becoming moot as well. See F.E.R. v. Valdez, 58 F.3d 1530, 1533 (10th Cir. 1995) (stating declaration that defendants previously violated plaintiffs' constitutional rights is not moot because supported by nominal damages claim).  See also Crue v. Aiken, 370 F.3d 668, 677 (7th Cir. 2004).

Here, the Pucket boys' claims are not moot because they have presented evidence that they were denied busing.  (Docket 82-1).  The denial of busing was allegedly in violation of the U.S. Constitution, which creates a claim for nominal damages.  Memphis v. Cmty Sch. Dist. v. Stachura, 477 U.S. 299, 308 n.11, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986) (stating that nominal damages were appropriate to vindicate the deprivation of a constitutional right).  See also Corpus v. Bennett, 430 F.3d 912, 916 (8th Cir. 2005).  This nominal damages claim was not mooted by the Pucket boys' graduation from Bethesda.  See Barcik v. Kubiaczyk, 895 P.2d 765, 778 (Or. 1995) (holding that students' graduation did not moot their nominal damages claim based upon alleged violation of their First Amendment rights while they were

15

students).  The Pucket boys' claims for declaratory relief, as a predicate to
their nominal damages claims, are also not moot.  See Valdez, 58 F.3d at
1533.

### 2.    The Pucket Parents

The Pucket parents, in their individual capacities, are also named
plaintiffs in the suit.  (Docket 1).  Prudential standing limitations generally
prevent parents from asserting a claim based on their children's rights.  See
Sullivan v. Syracuse Hous. Auth., 962 F.2d 1101, 1109 (2d Cir. 1992).
Parents do have standing, however, if the wrongful act infringes upon one of
their rights.  Id.

As a general matter, "[p]arents have a cognizable interest in their
children's religious education."  Steele, 845 F.2d at 1495; see also Schanou,
62 F.3d at 1042.  "One aspect of the religious freedom of parents is the right
to control the religious upbringing and training of their minor children."
Fleischfresser v. Dirs. of Sch. Dist. 200, 15 F.3d 680, 684 (7th Cir. 1994).  This
right grants parents standing to assert an establishment clause claim when
government action affects their children.  See Steele, 845 F.2d at 1495, see
also Sullivan, 962 F.2d at 1109; Roberts v. Madigan, 921 F.2d 1047, 1051
(10th Cir. 1990); Bell v. Little Axe Indep. Sch. Dist. No. 70, 766 F.2d 1391,
1398 (10th Cir. 1985), overruled on other grounds by Memphis Cmty. Sch.
Dist. v. Stachura, 477 U.S. 299, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986)).

16

This right also grants parents standing to assert a free exercise claim if government action infringes upon their direction of their children's religious upbringing.  See Fleischfresser, 15 F.3d at 684; Miller v. Benson, 878 F. Supp. 1209, 1212 (E.D. Wis.), vacated as moot on other grounds, 68 F.3d 163 (7th Cir. 1995).

Here, the Pucket parents exercised their rights by sending their children to a private, sectarian school.  School District's policy of denying busing to Bethesda students increased the costs of exercising that right.  This is sufficient injury-in-fact to grant the Pucket parents standing to assert a claim. See Miller, 878 F. Supp. at 1212 (holding that the parents' right to direct their children's religious training gave the parents standing to contest a government program that provided tuition payments for eligible students enrolled at private, nonreligious schools, but not those enrolled at private, religious schools).

Like the Pucket boys, the Pucket parents seek injunctive relief, declaratory relief, and compensatory damages.  Plaintiffs have presented evidence, which viewed in the light most favorable to them, establishes a claim for compensatory damages.  School District's policy prevented the Pucket boys from riding the bus to school for most of the 2002-2003 school year.  As a result, Dan Pucket had to drive the Pucket boys to school each day.  This additional transportation expense caused Dan Pucket to take a

construction job, which has prevented him from doing tasks at home and on the family ranch.  (Docket 82-2, at ¶ 24).  This evidence creates a genuine issue of material fact on whether the Pucket parents have a claim for damages.[2]  Accordingly, the Pucket parents' claims for compensatory damages are not moot.  See McFarlin, 980 F.2d at 1211.  They also continue to have a claim for declaratory relief.  See Crue, 370 F.3d at 677.

The closer issue is whether the Pucket boys' graduation moots the Pucket parents' claim for injunctive relief.  Parents are entitled to injunctive relief if there is a "real or immediate threat" that their interest in directing the religious upbringing of their children will be infringed upon in the future.  See Mosby, 418 F.3d at 933.  When the allegedly unlawful activity is occurring in a school, the graduation of all their children will likely moot their claim for injunctive relief.  See Schanou, 62 F.3d at 1043.  If, however, only some of their children have graduated and some still remain subject to the allegedly wrongful conduct, then the parents' claims are not moot.  See Steele, 845 F.2d at 1495.

---

[2] School District argues that the court should disregard the evidence of damages because there are factual inconsistencies in Amy Pucket's declaration. (Docket 86).  This argument lacks merit because the court does not weigh the credibility of the evidence in a motion for summary judgment; rather, the court construes all evidence, including all reasonable inferences based thereon, in favor of the nonmoving party.  Vette Co., 612 F.2d at 1077.

In <u>Steele</u>, the Eighth Circuit held that a mother's claim for injunctive relief was not moot even though her daughter had graduated from the school in which she was exposed to school prayer.  The court noted that the mother had an interest in directing the religious upbringing of all her children, and that she had two other daughters who would eventually attend the same school.  Accordingly, the court found that the mother's claim was not moot because her interest in preventing unconstitutional establishment of religion "will continue so long as she has children in the local schools." <u>Id.</u> at 1496.

Like <u>Steele</u>, the Pucket parents' claims are not moot because they have a younger child S.P. who currently attends Bethesda and is subject to School District's busing policy.  The Pucket parents' interest in preventing the unlawful denial of busing thus survived the Pucket boys' graduation, and they have standing to assert a claim for injunctive relief.

### 3.    Jim Wilhelm, Doris Wilhelm, and Jamie Wilhelm

School District also contends that the claims asserted by Jim Wilhelm, Doris Wilhelm, and Jamie Wilhelm (collectively the Wilhelms) are moot because Jamie has graduated from Bethesda.  This argument fails because each has a continuing claim for nominal damages based on the alleged infringement of their constitutional rights.  <u>See</u> <u>Corpus</u>, 430 F.3d at 916. Plaintiffs presented evidence that Jamie was denied busing to Bethesda. (Docket 82-2, ¶ 14).  This alleges a constitutional violation of Jamie's

constitutional rights.  Further, it also alleges a violation of Jim Wilhelm's and Doris Wilhlem's interests as parents in directing Jamie's religious upbringing. See, e.g., Steele, 845 F.2d at 1495.  The Wilhelms' claims for nominal damages are not moot.  See Kuhlmeier, 596 F. Supp. at 1427.  The claims for declaratory relief are also not moot.  Valdez, 58 F.3d at 1533.  The Wilhelms' claims for injunctive relief, however, are moot because plaintiffs presented no evidence that the Wilhelms face real and immediate threat that School District will infringe on their constitutional rights in the future.  See Mosby, 418 F.3d at 933.

### C.      Reinstatement of Busing

Alternatively, School District contends that plaintiffs' claims for injunctive relief are moot because School District reinstated busing for Bethesda students in May of 2003 following the enactment of SDCL 13-29-1.2.[3]  (Docket 86).  School District contends that this legislative enactment removed any dispute regarding its insurance coverage and prompted it to reinstate busing.  It also contends that there is no threat that it will deny busing in the future because it only denied busing out of fear of losing its insurance coverage.

---

[3] School District properly acknowledges that the reinstatement of busing Bethesda students does not moot plaintiffs' claim for damages.  (Docket 86).

There is a factual dispute about whether the enactment of SDCL 13-29-1.2 was the true motivation for School District's reinstatement of busing. Plaintiffs contend that the filing of their lawsuit, not the enactment of SDCL 13-29-1.2, caused School District to reinstate busing.  (Docket 82-1, at ¶ 6). Plaintiffs point to evidence that School District's insurer informed School District that transporting Bethesda students did not affect its liability insurance on February 28, 2003; that the S.D. Legislature enacted SDCL 13-29-1.2 on March 3, 2003; that plaintiffs filed their complaint on April 23, 2003; and that School District did not reinstate busing until May 16, 2003, after being served with the summons in the lawsuit.  (Docket 1, 82-4, at 8, 37, & 43).  This creates a genuine issue of fact regarding what motivated School District to reinstate busing.

Assuming, as the court must on summary judgment, that plaintiffs' lawsuit motivated School District, then plaintiffs' claims for injunctive relief are not moot because the voluntary cessation exception applies.  According to this exception, "the 'voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case, i.e., does not make the case moot.'" DeFunis v. Odegaard, 416 U.S. 312, 317, 94 S. Ct. 1704, 1706, 40 L. Ed. 2d 164 (1974) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 632, 73 S. Ct. 894, 897, 97 L. Ed. 1303 (1953)).  The exception "applies when 'resumption of the challenged conduct . . . depend[s] solely on

21

the defendants' capricious actions by which they are 'free to return to [their] old ways.'" Steele, 845 F.2d at 1494 (omission in original) (quoting Allen v. Likins, 517 F.2d 532, 535 (8th Cir. 1975)).  The case is only moot "'if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" McCarthy v. Ozark Sch. Dist., 359 F.3d 1029, 1037 (8th Cir. 2004) (quoting Young v. Hayes, 218 F.3d 850, 852 (8th Cir. 2000)).  The defendant "carr[ies] [the] heavy burden of showing that 'there is no reasonable expectation'" that the allegedly wrongful activity will recur.  Steele, 845 F.2d at 1495.

Here, School District has not carried its burden.  School District's failure to immediately reinstate busing following enactment of SDCL 13-29-1.2 creates a reasonable inference that School District had an inclination to deny Bethesda students busing.  SDCL 13-29-1.2 merely permits, but does not compel, a School District to provide busing.  Following dismissal of this suit, School District is free to revert to its prior inclination of denying Bethesda students busing.  Accordingly, the court finds that School District's reinstatement of busing does not make it "absolutely clear" that the denial of busing will "not reasonably be expected to recur."  See McCarthy, 359 F.3d at 1036.  Thus, plaintiffs' claims are not mooted by School District's voluntary reinstatement of busing.  Accordingly, it is hereby

ORDERED that State's and School District's joint motion to hold in abeyance (Docket 107) is denied.

IT IS FURTHER ORDERED that plaintiffs' motion for voluntary dismissal (Docket 104) is granted. All claims against defendants Michael Rounds, Lawrence Long, and Mark Barnett are dismissed without prejudice.

IT IS FURTHER ORDERED that defendants Lawrence Long and Mark Barnett are hereby reassigned as defendant intervenors.

IT IS FURTHER ORDERED that State's motion to dismiss or alternatively for judgment on the pleadings (Docket 52) is denied.

IT IS FURTHER ORDERED that School District's motion for summary judgment (49-1) is granted as to Luke's and Benjamin's claims seeking injunctive relief and those claims are dismissed with prejudice. School District's motion for summary judgment is denied as to all other claims asserted by plaintiffs Luke and Benjamin.

IT IS FURTHER ORDERED that School District's motion for summary judgment is denied as to all claims asserted by Daniel Pucket and Amy Pucket.

IT IS FURTHER ORDERED the School District's motion for summary judgment is granted as to plaintiffs Jim Wilhelm's, Doris Wilhelm's, and Jamie Wilhelm's claims seeking injunctive relief and those claims are dismissed with prejudice. School District's motion for summary judgment is denied as to all

23

other claims asserted by plaintiffs Jim Wilhelm, Doris Wilhelm, and Jamie Wilhelm.

Dated January 17, 2006.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE