UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DANIEL PUCKET, in his own capacity; AMY PUCKET, in her own capacity; LUKE PUCKET, by and through his parents and guardians, Daniel and Amy Pucket; BENJAMIN PUCKET, by and through his parents and guardians, Daniel and Amy Pucket, | ) ) ) ) ) ) ) ) | Civ. 03-5033-KES |
| | ) | |
| Plaintiffs, | ) | ORDER |
| | ) | |
| vs. | ) | |
| | ) | |
| HOT SPRINGS SCHOOL DISTRICT NO. 23-2; and its SCHOOL BOARD, | ) ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| LAWRENCE LONG, in his official capacity as Attorney General of South Dakota; and MARK BARNETT, in his official capacity as Chief Deputy Attorney General of South Dakota, | ) ) ) ) ) | |
| | ) | |
| Intervenor Defendants. | ) | |

Plaintiffs, Daniel Pucket, Amy Pucket, Luke Pucket, and Benjamin

Pucket (collectively referred to as plaintiffs), filed a lawsuit under 42 U.S.C.

§ 1983 against defendants Hot Springs School District and its School Board

(collectively referred to as School District) alleging that School District's

refusal to bus children to Bethesda Lutheran School violates the First and

Fourteenth Amendments to the United States Constitution.  Intervenor defendants Lawrence Long and Mark Barnett intervened to defend the constitutionality of article VI, section 3, and article VIII, section 16, of the South Dakota Constitution.  This order rules on the following pending motions:

- School District's motion to compel answers and motion for sanctions based on groundless assertion of privilege during depositions (Docket 213)

- Plaintiffs' motion to compel production of documents and to continue Hagedorn deposition (Docket 226)

- School District's motion to file a third-party complaint against Beth Spitzer (Docket 242)

- School District's second motion to compel Spitzer answers and third motion for sanctions (Docket 249)

- School District's motion to file a third party complaint against Anthony Picarello, individually, and the Becket Fund (Docket 270)

- Plaintiffs' motion to compel production of documents withheld by School District defendants (Docket 272)

- Plaintiffs' motion to strike School District's second amended third-party complaint against Beth Spitzer or in the alternative, for leave to file a sur-reply (Docket 289)

- School District's motion to amend answer (Docket 294)

- Plaintiffs' motion to strike School District's second amended third-party complaint against the Becket Fund and Anthony Picarello, or in the alternative, for leave to file a sur-reply (Docket 296)

## FACTUAL BACKGROUND

Plaintiffs are students at Bethesda Lutheran School (Bethesda) and their parents.  Bethesda is a private, sectarian school located in the Hot Springs School District.  Beth Spitzer was the principal of Bethesda.

In July of 2002, School District decided to ban the busing of students to Bethesda.  School District refused to bus students at the beginning of the 2002-2003 school year, although the School District did not adopt an official motion or resolution banning busing of Bethesda students until requested to do so by Spitzer during a Hot Springs Board of Education meeting on December 9, 2002.  School District reinstated busing of Bethesda students on May 16, 2003.  Plaintiffs assert that School District violated their constitutional rights by denying busing to Bethesda students.  Plaintiffs are represented by the Becket Fund in this litigation.

During discovery in this case, School District deposed Spitzer, Amy Pucket, and Dan Pucket.  School District moves to compel responses to certain deposition questions, arguing that plaintiffs' attorneys obstructed these depositions and improperly instructed the deponents not to answer.

School District also seeks leave to file a third-party amended complaint against Beth Spitzer alleging claims for deceit and contribution.  School District seeks leave to file a third-party complaint against Anthony Picarello and the Becket Fund, asserting claims for deceit, barratry, maintenance and

champerty, and contribution.  School District also seeks leave to amend its answer to assert waiver and estoppel as affirmative defenses.

Plaintiffs move to compel discovery.  Specifically, plaintiffs move to compel disclosure of documents created by Vern Hagedorn, superintendent of the Hot Springs School District.  The documents were requested pursuant to a timely request for document production.

## DISCUSSION

### I.   School District's Motions to Compel

School District moves to compel answers to questions posed during the depositions of Beth Spitzer, Amy Pucket, and Daniel Pucket.  Plaintiffs oppose the motions.  For the reasons discussed below, both motions are granted in part and denied in part.

#### A.   Spitzer's First Deposition

School District moves to compel answers to questions posed to Spitzer regarding her relationship with Rollyn Samp.[1]  School District attempted to

---

[1] Although School District makes two additional arguments relating to privilege and Spitzer, the court refrains from reaching these issues.  First, School District seeks a ruling stating that Spitzer waived the protection of the attorney-client privilege for all communications with the Becket Fund.  School District does not, however, move to compel Spitzer to answer any questions that she refused to answer during her deposition.  As a result, the court refrains from deciding the fact-specific issue of Spitzer's waiver of her attorney-client privilege because School District essentially seeks an impermissible, advisory opinion.

Second, School District argues that the pastor-penitent privilege does not apply to Spitzer's communications with Howard Shane.  Again, however,

inquire about Spitzer's conversation with Samp regarding his advice that an indemnification agreement might solve the insurance issue preventing the busing of Bethesda students.  Becket Fund asserted attorney-client privilege and instructed Spitzer not to answer.

Fed. R. Civ. P. 26(b)(1) defines the scope of discovery as "any matter, not privileged, that is relevant to the claim or defense of any party . . . ."  Rule 26(b)(1) further defines relevance broadly to include not only information admissible at trial but also any information "reasonably calculated to lead to the discovery of admissible evidence."  This broad scope of discovery applies to depositions, and thus, "instructions to a deponent not to answer certain questions are generally inappropriate."  Armstrong v. Hussman Corp., 163 F.R.D. 299, 302 (E.D. Mo. 1995).  There are only three instances when it is appropriate to instruct a deponent not to answer a question: (1) to preserve a privilege; (2) to enforce a court order limiting discovery; and (3) to present a

---

School District does not move to compel Spitzer to answer any questions.  In fact, the court's review of the deposition indicates that Spitzer answered all questions posed to her regarding  Howard Shane.

School District did ask the court to order plaintiffs to produce documents that were previously labeled as privileged.  The court cannot, however, determine from the current submissions what documents were requested and what, if any, documents were withheld based upon the alleged privilege between Spitzer and Howard.  As a result, the court refrains from reaching the issue of privilege between Spitzer and Howard at this time.  If there is an outstanding, unfulfilled request for document production as a result of this issue, then plaintiffs, after complying with the requirements of D.S.D. LR 37.1, should file a motion to compel.

motion to terminate the deposition that is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or a party.  See Fed. R. Civ. P. 30(d)(1); see also Armstrong, 163 F.R.D. at 302. A motion to compel is the proper procedure for obtaining an answer to a question if the opposing the witness is wrongfully instructed not to answer. See Fed. R. Civ. P. 37(a)(2)(B); see also Plaisted v. Geisinger Med. Ctr., 210 F.R.D. 527, 532 (M.D. Pa. 2002).

As a threshold matter, the court considers plaintiffs' contention that the court should deny the motion to compel without reaching the merits of the privilege issue because School District failed to comply with the requirements of D.S.D. LR 37.1.  This local rule requires the parties to meet and confer regarding discovery disputes before filing a motion to compel.  The court finds that the discussion between plaintiffs' attorneys and School District's attorneys during Spitzer's deposition regarding application of the attorney-client privilege to communications between Spitzer and Samp satisfies the meet-and-confer requirements of D.S.D. LR 37.1.  The court thus proceeds to the merits of whether plaintiffs' attorneys properly instructed Spitzer not to answer based upon attorney-client privilege.

According to Fed. R. Evid. 501, federal common law determines the scope of the attorney-client privilege in this § 1983 action.  Proposed Fed. R. Evid. 503 provides a " 'useful starting place' for an examination of the federal

6

common law of attorney-client privilege." <u>In re Grand Jury Subpoena Duces Tecum</u>, 112 F.3d 910, 915 (8th Cir. 1997) (quoting <u>In re Bieter Co.</u>, 16 F.3d 929, 935 (8th Cir. 1994)).  Proposed Rule 503(b) states:  "A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client . . . between himself or his representative and his lawyer or his lawyer's representative . . . ." 24 Charles Alan Wright & Kenneth W. Graham, Jr., <u>Federal Practice & Procedure</u> at 37 (1986).  "In order for the privilege to be applicable, the parties to the communication in question must bear the relationship of attorney and client." <u>Diversified Indus., Inc. v. Meredith</u>, 572 F.2d 596, 602 (8th Cir. 1977).  If, however, a person seeks legal advice from an attorney and reasonably believes that the attorney represents him or her, then communications between that person and the attorney are subject to the attorney-client privilege even if no actual attorney-client relationship exits or develops.  <u>Westinghouse Elec. Corp. v. Kerr-McGee Corp.</u>, 580 F.2d 1311, 1319-20 (7th Cir. 1978); <u>see also</u> <u>In re Grand Jury Subpoena Duces Tecum</u>, 580 F.3d at 923 ("[C]ourts have found the privilege applicable where the client . . . reasonably believed that a lawyer represented the client rather than another party.").  Voluntary disclosure of the confidential communication to either an opposing or third party expressly waives the privilege.  <u>United States v. Workman</u>, 138 F.3d 1261, 1263 (8th Cir.

1998).  The scope of an express waiver is not limited to the communication disclosed but applies to "other communications relating to the same subject matter." <u>John Morrell & Co. v. Local Union 304A of United Food & Commercial Workers, AFL–CIO & CLC</u>, 913 F.2d 544, 556 (8th Cir. 1990); <u>see also</u> <u>Engineered Prods. Co. v. Donaldson Co.</u>, 313 F. Supp. 2d 951, 1020 (N.D. Iowa 2004).

School District argues that Spitzer and Samp did not enter into an attorney-client relationship, and thus, the attorney-client privilege does not apply.  The court disagrees.  The court finds that Spitzer and Samp had an attorney-client relationship because Spitzer explicitly testified that she sought and obtained legal advice from Samp.  (Docket 231-2, at 198-99). Additionally, the court's review of communications between Spitzer and Samp indicated that Samp provided legal advice.  <u>See</u> <u>Westinghouse</u>, 580 F.2d at 1320 ("The professional relationship for the purposes of the privilege for attorney-client communications hinges upon the client's belief that he is consulting a lawyer in that capacity and his manifested intention to seek professional legal advice." (internal quotation omitted)); <u>see also</u> Edna Selan Epstein, <u>The Attorney-Client Privilege and the Work-Product Doctrine</u> 47 (4th ed. 2001).

School District also argues that Spitzer waived the attorney-client privilege for all communications that she had with Samp because the Becket

8

Fund, acting as Spitzer's attorney, disclosed two letters that Samp wrote to Spitzer.  Plaintiffs concede that this waives the attorney-client privilege for the communications contained in these two letters.  The parties dispute, however, the scope of this explicit waiver.

The court disagrees with School District's suggestion that disclosure of one communication between Spitzer and Samp automatically waives the attorney-client privilege for all communications between them.  Instead, the disclosure of the letters from Samp only waives the attorney-client privilege for communications regarding the same subject matter as the communications contained in the disclosed letters.  See John Morrell & Co., 913 F.2d at 556.

The court does agree with School District's argument, however, that disclosure of the letters from Samp waived the attorney-client privilege protection for three questions Spitzer refused to answer during her deposition. In the letter dated July 16, 2002, Samp provides Spitzer two specific types of legal advice: (1) that a release and indemnification provision might solve the lack of insurance problem, and (2) that an attorney general's opinion is not law.  Further, in the July 24, 2002 letter, Samp informed Spitzer that School District should agree to an indemnification provision before Samp would draft the indemnification form.

The court finds that the three questions Spitzer was instructed not to answer during her deposition were on the same subject matter, namely

9

whether Bethesda students and their parents could use an indemnification agreement to solve the insurance issue that was allegedly preventing busing. In the first question, School District directly referenced the July 16, 2004 letter, in which Samp informed Spitzer that he reviewed all the documents that Spitzer sent him.  School District asked Spitzer: "What documents had you sent to Rolly Samp?"  (Docket 213-2, at 62).  The court finds that the documents Samp reviewed in formulating his advice are on the same subject matter as the advice itself, which was voluntarily disclosed.  See Fujisawa Pharm. Co. v. Kapoor, 162 F.R.D. 539, 541-52 (N.D. Ill. 1995) (holding that waiver of attorney-client privilege regarding attorney's legal advice also applied to the information attorney considered in giving the advice).

The court finds that the second and third questions also are on the same subject matter as the July 16, 2002, and July 24, 2002, letters.  In the second question, School District asked Spitzer "Ma'am, did you suggest the issue of indemnification to Rolly Samp?"  (Docket 213-2, at 65).  In the third question, School District asked  "Did you ask Rolly Samp to offer you information about the viability of an indemnification agreement to solve the problem of busing?"  (Docket 213-2, at 65).  The court finds that these questions go directly to the disclosed legal advice—that an indemnification provision could solve the insurance problem.  As a result, the attorney-client privilege was waived regarding these questions as well.

10

In sum, the court finds that Spitzer was improperly instructed not to answer these three questions regarding her communications with Samp because Spitzer waived the attorney-client privilege protection governing these questions.  As a result, the court will permit an additional deposition of Spitzer.  The deposition will be limited, however, to Spitzer's unprivileged communications with Samp as identified here.

### B.    Spitzer's Second Deposition

School District also moves to compel answers to four questions posed to Spitzer in her second deposition.[2]  Upon instruction of counsel, Spitzer invoked the attorney-client privilege and refused to answer these questions.

The first question asks Spitzer: "Do you agree with me that you had the Becket Fund rewrite part of your *Eagle Report* to the congregation?"  (Docket 249-2, at 17). To the extent that this question seeks disclosure of a communication between Spitzer and her attorneys, the court finds that Spitzer waived any attorney-client privilege protection.  In fact, Spitzer, without any invocation of privilege, essentially answered this question when she testified that she wrote a draft of the *Eagle Report*, faxed it to Anthony Picarello for corrections, and incorporated those corrections in the final

---

[2] School District cites to sixteen pages of deposition testimony in which Spitzer allegedly refused to answer questions based upon privilege.  The court's review of the deposition indicates that Spitzer answered all but four of the questions posed.  As a result, the court only considers whether to compel answers to these four questions.

version.  (Docket 249-2, at 8).  As a result, the court finds that Spitzer waived

the attorney-client privilege protection governing any communications

regarding the drafting of the *Eagle Report*.  See John Morrell & Co., 913 F.2d

at 556.

> In the second question, the following dialogue occurred:
>
> Q:  November 24, 2002, your first entry, "We are TOO LATE!"
> TOO LATE in caps with an exclamation mark.  Too late for
> what?
>
> A:  Well, I believe that Anthony and Rollyn were going to write –
>
> Mr. Severino:  Hold on a moment.  You do not have to disclose
> attorney-client communications to you.
>
> * * *
>
> Mr. Severino:  I am instructing the witness not to divulge
> attorney-client communications.  If she doesn't need to, she may
> answer as much as she likes.
>
> * * *
>
> A:  Yeah, I'm going to say that was between the attorneys and I,
> and I –

(Docket 249-2, at 63-64).  Based on this colloquy, the court finds that the

answer would have disclosed confidential communications between Spitzer

and her attorneys, and thus, the attorney-client privilege was properly

asserted to prevent Spitzer from answering.

> In the third question, the School District's attorneys asked Spitzer: "And

at the time you were doing that, you had not established any attorney-client

relationship with the Becket Fund, had you?" (Docket 249-2, at 77).  The court finds that this question does not require the disclosure of privileged communications, and thus, Spitzer was inappropriately instructed not to answer.  As a result, School District can ask Spitzer this question in her next deposition.[3]

In the fourth question, the School District's attorney asked a follow-up question following a waiver of the attorney-client privilege by Spitzer.  Spitzer waived her attorney-client privilege regarding a communication with her attorneys on December 6, 2002, in which her attorneys instructed her to contact the School District and find out why she was not on the agenda for an impending school board meeting.  (Docket 249-2, at 83).  Spitzer testified that she followed her attorneys' advice and called the School District.  Spitzer was then asked "And, again, all of this was in preparation for getting you on the agenda in front of the Hot Springs School District to ask them to make an official declaration that they would not bus the children, correct?"  Plaintiffs'

---

[3] Because this question may be asked again, the court notes that most, if not all, of the objections to School District's attorneys' questions seeking to determine whether a document was produced in anticipation of litigation or whether an attorney-client relationship existed are well taken.  By asking these questions, School District's attorneys are using legal terms of art that refer to complex privilege issues.  Unless School District can lay adequate foundation to indicate that the deponent possesses adequate legal knowledge or training, these questions are objectionable.

13

attorneys instructed Spitzer to limit her answer to information gained from attorney-client communications on December 6, 2002.

The court finds that plaintiffs' attorneys erroneously instructed Spitzer to limit her answer.  Spitzer's waiver of her attorney-client privilege is not limited to communications that occurred on December 6, 2002.  Instead, by disclosing that her attorneys instructed her to contact the School District to determine why the busing issue was absent from the school board meeting's agenda, Spitzer waived the attorney-client privilege for all communications on the subject, including why her attorneys wanted her to attend the meeting.  See John Morrell & Co., 913 F.2d at 556.  As a result, School District may inquire into this subject at Spitzer's next deposition.

In sum, the court finds that plaintiffs' attorneys improperly instructed Spitzer not to answer three questions in her second deposition.  As a result, the court will allow Spitzer to be re-deposed on these issues.

## C.    Deposition of Amy Pucket and Dan Pucket

Plaintiffs move to compel Amy Pucket and Dan Pucket (collectively referred to as the Puckets) to answer several questions that they were instructed not to answer during their deposition based upon privilege.  These questions fall into two categories.  The first category includes questions attempting to get at the substance of conversations that the Puckets had with other clients of the Becket Fund, including Spitzer and the Wilhelms.  The

14

second line of questions seeks information regarding plaintiffs' fee arrangement with the Becket Fund.

### 1.   Conversations Between Co-Clients

School District asked Amy Pucket and Dan Pucket questions regarding conversations that they had either among themselves or with Spitzer or the Wilhelms.  Plaintiffs' attorneys asserted privilege and instructed the Puckets not to answer the questions.  Plaintiffs argue that the communications are protected by the common interest doctrine.  School District contends that the communications are not privileged.

The common interest doctrine is an exception to the rule that voluntary disclosure of confidential, privileged material to a third party waives the privilege.  See In re Grand Jury Subpoena Duces Tecum, 112 F.3d at 922. The common interest doctrine permits persons or entities with a common interest to share privileged information without waiving the underlying privilege.  See id.; see also In re Grand Jury Subpoenas 89-3 & 89-4, 902 F.2d 244, 248 (4th Cir. 1990).  Because it is an exception to waiver, the common interest doctrine "presupposes the existence of an otherwise valid privilege, and the rule applies not only to communications subject to the attorney-client privilege, but also to communications protected by the work-product doctrine."  In re Grand Jury Subpoenas 89-3 & 89-4, 902 F.2d at 249.

School District contests application of the common interest doctrine for three reasons.  First, School District argues that the common interest doctrine cannot apply to communications between Spitzer and the Puckets before December 3, 2002, because this is the first time that the Becket Fund lawyers contacted the Puckets.  Implicitly, School District is arguing that there is no attorney-client relationship between the Puckets and the Becket Fund before December 3, 2002, and thus, there is not an underlying privilege governing communications involving the Puckets.

School District's argument erroneously assumes that the underlying privilege must belong to the Puckets.  Instead, the underlying privilege was the attorney-client privilege covering communications between the Becket Fund and Spitzer.  As the court noted in its previous order dated April 13, 2006, communications between the Becket Fund and Spitzer were protected by the attorney-client privilege.  Further, as discussed below, Spitzer could share the substance of these communications with the Puckets without waiving the attorney-client privilege because Spitzer and the Puckets had a common interest.

Second, School District argues that the common interest doctrine does not apply to communications between Spitzer and the Puckets because Spitzer and the Puckets do not have a legally cognizable common interest. The court disagrees.  According to the Eighth Circuit, "[t]he common interest

16

may be either legal, factual, or strategic in nature." In re Grand Jury
Subpoena Duces Tecum, 112 F.3d at 922 (internal quotation omitted); see
also Restatement (Third) of Law Governing Lawyers § 76 cmt. e (2000).  Here,
the court finds that Spitzer and the Puckets have a common legal and factual
interest, namely the reinstatement of busing of Bethesda students.  Spitzer,
as the principal of Bethesda, worked actively throughout the summer, fall,
and winter of 2002 to reinstate busing for Bethesda students.  She eventually
sought legal advice from the Becket Fund on how to obtain the reinstatement
of busing.  The Puckets, as parents of Bethesda students who lost busing
benefits, are also seeking the reinstatement of busing.  Through the
assistance of Spitzer, the Puckets sought legal advice from the Becket Fund
and filed a lawsuit seeking the reinstatement of busing.

Third, School District argues that the common interest doctrine only
applies to communications that occurred in the presence of the Becket Fund
attorneys.  Plaintiffs respond by asserting that the common interest doctrine
enables the Beckett Fund attorneys to communicate privileged legal strategy
to Spitzer and have Spitzer forward that information to the Puckets without
waiving the underlying privileged status.

The court disagrees with School District's contention that the common
interest never applies to conversations between Spitzer and the Puckets that
were held outside the presence of the Becket Fund attorneys.  See IBJ

17

Whitehall Bank & Trust Co. v. Cory & Assocs. Inc., No. Civ. A. 97 C 5827,
1999 WL 617842, at *6 (N.D. Ill. Aug. 12, 1999); see also Reginald Martin
Agency, Inc. v. Conseco Med. Ins. Co., No. 1:04-cv-01587-TAB-RLY, 2006 WL
3197149, at *3 (S.D. Ind. March 31, 2006) (applying Indiana law). But see
Schachar v. Am. Acad. of Ophthalmology, Inc., 106 F.R.D. 187, 193 (N.D. Ill.
1985) (stating that attorney must be a party to the communication for the
common interest doctrine to apply).  In IBJ Whitehall Bank & Trust Co, the
third-party defendant sought discovery of several communications between
two parties who had a common interest.  The third-party defendant argued
that the common interest doctrine did not apply because the communications
occurred outside the presence of the parties' attorneys.  After analyzing the
underlying policies served by the attorney-client privilege and the common
interest doctrine, the District Court for the Northern District of Illinois
disagreed.  The court held that the common interest doctrine applies to
privileged communications between parties in three instances:  "(1) one party
is seeking confidential information from the other on behalf of an attorney;
(2) one party is relaying confidential information to the other on behalf of an
attorney; and (3) the parties are communicating work product that is related
to the litigation."  Id. at *6.

　　　This court finds the district court's reasoning in IBJ Whitehall Bank &
Trust Co., including its rejection of Schachar, persuasive.  The court thus

18

adopts it here.  As a result, the court finds that Spitzer's communication of
confidential, privileged legal advice from the Becket Fund attorneys to the
Puckets is protected by the common interest doctrine, even if these
communications occurred outside the presence of the Becket Fund attorneys.
Just because Spitzer and the Puckets communicated about this case,
however, does not make that communication per se privileged.  See Reginald
Martin Agency, Inc., 2006 WL 3197149, at *3.  Instead, the underlying
substance of the communication must be privileged in that it must involve
either work product or the solicitation or giving of legal advice.  See id.

With these principles in mind, the court reviewed the transcripts of both
Amy Pucket and Dan Pucket.  Although a couple of the questions were so
broad or vague that the court has difficulty determining whether privilege was
properly invoked, on the whole, the court finds that the Becket Fund lawyers
properly instructed the Puckets not to answer questions regarding their
conversation with Spitzer, the Wilhelms, and among themselves.  As a result,
plaintiffs' motion to compel answers to these questions is denied.

### 2.    Questions Regarding Fee Arrangements

School District moves to compel Amy Pucket to answer questions posed
to her during her deposition.  The questions related to the attorneys' fees
being charged by the Becket Fund.  Amy Pucket was instructed not to answer
those questions based upon attorney-client privilege.  In response to the

motion to compel, plaintiffs concede that generally attorneys' fee arrangements are not protected by the attorney-client privilege.  (Docket 241, at 11 n.12).  Plaintiffs argue, however, that the motion to compel should be denied because their production of an engagement letter answers 5 of the 7 questions posed and the two remaining questions called for privileged material.

"Absent special circumstances, client identity and fee arrangements are not confidential communications protected by the attorney-client privilege." In re Grand Jury Proceedings Subpoena to Testify to: Wine, 841 F.2d 230, 234 n.3 (8th Cir. 1988).  One special circumstance that may make a fee arrangement privileged is the "confidential communications exception, which . . . protects client identity and fee information 'if, by revealing the information, the attorney would necessarily disclose confidential communications.' " United States v. Sindel, 53 F.3d 874, 876 (8th Cir. 1995) (quoting In re Grand Jury Proceedings (85 Misc. 140), 791 F.2d 663, 665 (8th Cir. 1986)).

School District asked Amy Pucket two different lines of questions regarding her fee arrangement with the Becket Fund.  The first line of questions asked Amy Pucket whether she is paying attorneys' fees for her representation by the Becket Fund in this case.  In response to the motion to compel, plaintiffs correctly concede that the answers to these questions are

not privileged.  (Docket 262-1, at 11).  Plaintiffs argue that the court should

not reconvene the deposition of Amy Pucket to answer these questions,

however, because plaintiffs have produced an engagement letter indicating

that the Becket Fund will not charge the Puckets any costs or attorneys' fees.

Although the court does not condone the improper assertion of privilege to

prevent Amy Pucket from answering this line of questioning, the court finds

that there is no need to reconvene the deposition because the engagement

letter answers the questions posed.  Cf. In re Omeprazole Patent Litig., Nos.

M-21-82, M-21-91, 2000 WL 1145399, at *10 (S.D.N.Y. Aug. 1, 2000)

(refusing to compel a further deposition despite improper instruction not to

answer because the answer to the question was "apparent from the existing

transcript").  The court also finds that the answers to this question would

have little bearing on the issues central to this case, namely the

constitutionality of the denial of busing to Bethesda students.  The only thing

that would be accomplished by reconvening Amy Pucket's deposition is the

needless increase in the litigation costs for both plaintiffs and School District.

The court thus denies School District's motion to compel answers to these

questions.  See Banks v. Office of Senate Sergeant-at-Arms, 233 F.R.D. 1, 7

(D.D.C. 2005) (refusing to reconvene deposition when answers to questions

would "add nothing to the resolution of the claims" in the lawsuit).

The School District's other line of questioning inquired whether the Becket Fund promised Amy Pucket that she would not be liable for defendants' attorneys' fees if plaintiffs did not prevail in this case. (Docket 132, at 19, 34). The court finds that these questions fit within the confidential communication exception. By asking these questions, School District is attempting to elicit the substance of the Becket Fund's confidential legal advice to plaintiffs, namely whether plaintiffs will be personally liable, presumably under 42 U.S.C. § 1988, for attorneys' fees if defendants prevail. The court finds that this information is privileged, and it was proper to instruct Amy Pucket not to answer. As a result, School District's motion to compel answers to these questions is denied.

## II.      Plaintiffs' Motions to Compel

Plaintiffs move to compel two different sets of documents. First, plaintiffs move to compel disclosure of an unredacted copy of Exhibit 24 to the Vern Hagedorn deposition. Plaintiffs also move to compel disclosure of all documents listed in Hagedorn's privilege log as "notes." School District opposes both motions.

### A.      Ex. 24

Plaintiffs move to compel production of the unredacted version of the running log of events related to busing created by Vern Hagedorn, which was labeled at Hagedorn's deposition as Hagedorn deposition Ex. 24. School

22

District asserted attorney-client privilege and work product doctrine and redacted portions of Ex. 24 before producing it.  Plaintiffs assert that the privilege was waived.

The chain of events surrounding disclosure of Hagedorn's log and Ex. 24 requires some elaboration.  Hagedorn kept an electronic version on his computer of a running log of events relating to the busing issue.  Early in the litigation, Hagedorn sent a copy of his log to School District's attorneys pursuant to a request for production.  Although Hagedorn's log was two-sided, he only copied the front side of each page when he provided a copy to School District's counsel.  School District then disclosed this front-side-only version of the log to plaintiffs.  The one-sided version is Hagedorn deposition Ex. 16. School District did not claim privilege to any portions of Ex. 16 when it produced the log to plaintiffs.  Hagedorn continued to add information to the log after the disclosure of Ex. 16.

Later, in response to plaintiffs' concerns that previous responses to discovery requests were incomplete, School District's attorneys searched their file.  School District's attorneys realized that only one side of several two-sided documents had been produced to plaintiffs.  As a result, School District updated its disclosures by providing new copies of the entire previously disclosed file.  This included a copy of Ex. 24, which is Ex. 16 with both the

23

front and back sides of each page of the log.  School District disclosed these documents a couple of days before Hagedorn's deposition.

When Hagedorn was deposed, he indicated that Ex. 16 was not his complete log, and that he had continued to add entries to his log.  He testified that he kept an electronic copy and that there were multiple versions that had been printed at different points in time.  School District's attorneys represent that, based on this testimony, they realized for the first time that Ex. 16 was not the only version of Hagedorn's log.  School District's attorneys state that they accidentally included the unredacted copy of Ex. 24 in the document production performed days before Hagedorn's deposition because they thought Ex. 24 was identical to Ex. 16, which had been previously disclosed.

The unique facts regarding the disclosure of Ex. 16 and Ex. 24 create two separate waiver issues.  First, the court must determine the consequences of Hagedorn's voluntary disclosure of Ex. 16.  As noted above, the voluntary disclosure of privileged communications waives the privilege to all communications on the same subject matter.  See John Morrell & Co., 913 F.2d at 556.  With this principle in mind, the court has reviewed Ex. 24 in camera and compared it to Ex. 16.  Based on this review, the court finds that School District waived the privilege governing the attorney-client communication contained in the log entry dated January 22, 2003.  As a

24

result, School District shall provide plaintiffs an unredacted version of this
entry.

The second waiver issue relates to the consequence of School District's
inadvertent disclosure of the unredacted copy of Ex. 24 in the document
production a couple of days before Hagedorn's deposition.  Courts
have espoused three different standards to determine whether the privileged
status of the document is waived in the inadvertent disclosure situation.
First, according to the "lenient test," the attorney-client privilege must be
"knowingly waived."  Gray v. Bicknell, 86 F.3d 1472, 1483 (8th Cir. 1996).  The
second test, known as the "strict test," states that all disclosures of
confidential information, intentional or otherwise, waive the underlying
privilege.  See id.  Finally, the third approach is known as the "middle test" or
the Hydraflow test.  According to the Hydraflow test, the court engages in a
five-step analysis of the inadvertently disclosed document and considers the
following: (1) the reasonableness of precautions used to prevent inadvertent
disclosure; (2) the number of inadvertent disclosures; (3) the extent of the
disclosures; (4) the promptness of measures taken to rectify the disclosure;
and (5) the interests of justice.  See id.  Although the Eighth Circuit has not
decided which approach applies to inadvertent disclosure of privileged
documents in federal question cases, the court follows Judge Bennett's
opinion in Engineered Products Co. v. Donaldson Co., 313 F. Supp. 2d 951

(N.D. Iowa 2004), and applies the <u>Hydraflow</u> test here.[4]  <u>See id.</u> at 1020; <u>see also</u> <u>Gray</u>, 86 F.3d at 1484 (applying <u>Hydraflow</u> test to diversity case when there was no controlling state law); <u>Starway v. Indep. Sch. Dist. No. 625</u>, 187 F.R.D. 595, 596 (D. Minn. 1999) (applying <u>Hydraflow</u> to federal question case).

Based on the <u>Hydraflow</u> factors and the unique circumstances of this case, the court finds that School District did not waive the attorney-client privilege that attaches to the communications contained in Ex. 24 when School District inadvertently produced an unredacted copy of Ex. 24. Regarding the first factor, the court finds that School District employed reasonable precautions to prevent inadvertent disclosure of privileged material.  Following plaintiffs' complaint that School District had not produced all requested documents, one of School District's attorneys and a paralegal reviewed the file containing Hagedorn's documents.  Because of the copying mistake, School District's lawyer thought that Ex. 24 had already

---

[4] Plaintiffs suggest that the "law of the case," as established by the court when discussing Spitzer's waiver of attorney-client privilege in its order dated April 13, 2006, requires the court to apply the "strict test" here.  This argument overlooks the distinction between a voluntary, non-accidental disclosure and an inadvertent disclosure.  In Spitzer's case, she intentionally produced her entire file.  She did not mistakenly include privileged material that she intended to exclude.  Here, however, School District inadvertently or mistakenly included Ex. 24 in its response to the document production.  <u>See</u> <u>Starway v. Indep. Sch. Dist. No. 625</u>, 187 F.R.D. 595, 596 (D. Minn. 1999) (applying the <u>Hydraflow</u> test when the party "mistakenly" produced privileged documents).  Thus, the voluntary, non-accidental disclosures test is not applicable here.

been produced as Ex. 16, and thus, it did not withhold those documents as privileged.  The court finds that this review of the file by both an attorney and paralegal to remove privileged material is a reasonable precaution.  See Starway, 187 F.R.D. at 598 (indicating that adequate precautions were taken when counsel, rather than "non-lawyer staff" reviewed the documents and removed privileged material); see also United States v. Mallinckrodt, Inc., 227 F.R.D. 295, 298 (E.D. Mo. 2005).

The second factor also weighs in favor of School District.  The court finds that Ex. 24 is the only inadvertent disclosure of privileged material. Plaintiffs argue that Ex. 16, however, exhibited a similar inadvertent disclosure of privileged material.  The court disagrees because School District has never asserted its disclosure of Ex. 16 was anything but intentional.  As a result, although disclosure of Ex. 16 acts as a waiver of the attorney-client privilege, it is a voluntary waiver rather than an inadvertent disclosure.

The court also finds that the disclosure was not extensive.  Ex. 24 consists of thirteen pages.  It is undisputed that School District has produced over a thousand pages of documents pursuant to discovery requests in this case.  Further, the amount of privileged material inadvertently disclosed in the thirteen, single-spaced pages of Ex. 24 is relatively small.  Of those thirteen pages, School District only seeks to make fifteen redactions, comprising approximately 66 lines of single-spaced text.

The court also finds that School District acted promptly when it realized that it inadvertently disclosed an unredacted copy of Ex. 24. In fact, plaintiffs concede that School District acted promptly when it realized during Hagedorn's deposition that there were multiple versions of the Hagedorn's event log, including Ex. 24. Plaintiffs argue, however, that School District did not promptly assert the privilege in material disclosed in Ex. 16. The court finds this fact irrelevant, however, because Ex. 16 was voluntarily, not inadvertently, disclosed.

Finally, the court finds that the interests of justice weigh in favor of finding that School District did not waive the attorney-client privilege. School District argues that the redacted materials are classic legal advice that should be protected by the attorney-client privilege. The attorney-client privilege promotes the just resolution of disputes by facilitating forthright communication between counsel and client. See Upjohn Co. v. United States, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L. Ed. 2d 584 (1981). Plaintiffs do not suggest that the disclosure of the privileged material would help resolve the issues in dispute. Instead, plaintiffs argue that the court should punish School District's allegedly dilatory response to requests for production by finding that School District waived the attorney-client privilege. The court disagrees. The timeliness of the disclosed documents has no bearing on whether justice demands that the privileged information here be disclosed.

28

In sum, the court finds that the inadvertent disclosure of the
unredacted form of Ex. 24 did not amount to a waiver of the underlying
attorney-client privilege.  School District's voluntary disclosure of Ex. 16 did,
however, amount to waiver of the attorney-client privilege for all
communications contained in Ex. 16 and all communications on the same
subject matter.  As a result, the court finds that School District waived the
privilege for the entry dated January 22, 2003, and School District must
produce an unredacted version of this entry.  All other redactions of Ex. 24,
however, are appropriate.

### B.    Other Documents

Plaintiffs move to compel production of documents described in the
privilege log as "notes."[5]  The court has reviewed these documents <u>in camera</u>
and finds that following documents are not privileged and should be
produced:

One, the notes dated March 20, 2006, and contained in privilege log
entry no. 4.  As an initial matter, the court notes that this document might
have been protected by the work product doctrine, but School District waived

---

[5] In their reply brief, plaintiffs ask the court to review all the documents
listed in the privilege log <u>in camera</u>.  The court will not permit plaintiffs to
increase the scope of their motion to compel in their reply brief, thereby
preventing School District from responding to their argument.  <u>Cf.</u> <u>Johnson v.
Berry</u>, 171 F. Supp. 2d 985, 990 n. 3 (E.D. Mo. 2001) (court will not consider
new arguments raised for the first time in a reply).  As a result, the court limits
its <u>in camera</u> review to the documents described as "notes" in the privilege log.

that argument by only asserting the attorney-client privilege in its privilege log.  See Carey-Canada, Inc. v. Cal. Union Ins. Co., 118 F.R.D. 242, 248-49 (D.D.C. 1986); see also Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1B, 230 F.R.D. 398, 418 (D. Md. 2005).  Further, the notes dated March 20, 2006, are not protected by the attorney-client privilege because they do not contain a communication between Hagedorn and his attorney.  Instead, this entry refers to an unprivileged document, which does not gain attorney-client privilege protection because it is subsequently communicated to Hagedorn's attorneys.  See PaineWebber Group, Inc. v. Zinsmeyer Trusts P'ship, 187 F.3d 988, 994 (8th Cir. 1999); see also Upjohn Co., 449 U.S. at 395-96, 101 S. Ct. 677.

Two, the handwritten notes on the letter contained in privilege log entry 76A.  The contents of the letter are covered under the attorney-client privilege and should be redacted.  School District has failed to carry its burden of establishing that the notes hand-written on the letter are privileged, however.

Three, the Bethesda Busing Documentation contained at Bates Nos. 0232764–0232779.  This is a newer version of Hagedorn's log of events found in Ex. 16 and Ex. 24.  For analysis purposes, the court separates those entries dated before and after 5/23/02.  For entries before 5/23/02, School District waived any attorney-client or work-product privilege when it disclosed Ex. 16 and the redacted version of Ex. 24.  As a result, School District must

30

produce all entries before this date.  School District should, however, redact

these entries consistent with the court's discussion of Ex. 24.  As for all

entries after 5/23/02, the court finds that they were prepared by a client in

anticipation of litigation, and thus, protected by the work-product doctrine.

See Fed. R. Civ. P. 26(b)(3).  Further, there is no indication that this protection

has been waived.  As a result, plaintiffs do not need to disclose any entries

dated later than 5/23/02.

### C.    Continue Hagedorn's Deposition

Plaintiffs move to continue Hagedorn's Rule 30(6)(b) deposition.  School

District agreed to hold the deposition open regarding Hagedorn's audio tape

recording, documents listed in Hagedorn's privilege log, and documents

disclosed for the first time at Hagedorn's deposition.  (Docket 227-5).  The

court holds School District to its agreement and will permit Hagedorn to be

deposed on these, and only these, matters.

## III.  Sanctions and Discovery Referee

School District moves for sanctions under Fed. R. Civ. P. 30(d)(3) and

28 U.S.C. § 1927 arising out of plaintiffs' attorneys' behavior during the

depositions of Spitzer, Amy Pucket, and Dan Pucket.  Both School District

and plaintiffs prevailed, at least in part, on motions to compel discovery,

thereby triggering the sanction provisions contained in Fed. R. Civ. P.

37(a)(4)(A).  School District also seeks the appointment of a discovery referee

in this case.  After considering all the submissions on these issues, the court

concludes that neither sanctions nor a discovery referee are appropriate.

Rule 30(d)(3) provides for the imposition of sanctions upon a finding

that "impediment, delay, or other conduct has frustrated the fair examination

of the deponent."  "Rule 30(d)(3) requires only that the attorney's conduct

frustrated the fair examination of the deponent."  Sicurelli v. Jeneric/Pentron,

Inc., No. 03:CV4934(SLT)(KAM), 2005 WL 3591701, at *7 (E.D.N.Y. Dec. 20,

2005).  School District suggests that plaintiffs' attorneys' unwarranted

objections and coaching frustrated the fair examination of Spitzer, Amy

Pucket, and Daniel Pucket.  The court disagrees.  First, after reviewing the

depositions, the court finds that most of the objections were appropriate

because the questions were in fact objectionable.  Second, the court finds that

plaintiffs' counsel only instructed the deponent not to answer when asserting

privilege.  See Fed. R. Civ. P. 30(d)(1) advisory committee notes; see also

Sicurelli, 2005 WL 3591701, at *8.  Third, most of the objections were stated

in a concise, non-argumentative manner, thereby complying with Fed. R. Civ.

P. 30(d)(2).  See Morales v. Zondo, Inc., 204 F.R.D. 50, 54 (S.D.N.Y. 2001)

(imposing sanctions for attorney's "detailed objections, private consultations

with the witness, instructions not to answer, instructions how to answer,

colloquies, interruptions, and ad hominem attacks").  Finally, the court notes

that Spitzer, Amy Pucket, and Daniel Pucket almost always answered the

question posed despite the objection.  The court thus finds that although the actions of plaintiffs' attorneys may have been inappropriate at times, they did not frustrate the fair examination of the deponent.  Sanctions, therefore, are not warranted under Fed. R. Civ. P. 30(d)(3).

The court also finds that sanctions are not appropriate under 28 U.S.C. § 1927.  Section 1927 enables the court to award sanctions if an attorney's conduct "multiplies the proceedings in any case unreasonably and vexatiously."  Sanctions are appropriate "when an attorney's conduct 'viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'"  Tenkku v. Normandy Bank, 348 F.3d 737, 743 (8th Cir. 2003) (quoting Perkins v. Spivey, 911 F.2d 22, 36 (8th Cir. 1990)).  Courts construe § 1927 strictly to prevent the chilling of zealous advocacy by an attorney.  See Lee v. L.B. Sales, Inc., 177 F.3d 714, 718 (8th Cir. 1999).  Here, for the reasons discussed above relating to Fed. R. Civ. P. 30(d)(3), the court finds that plaintiffs' attorneys' objections during the depositions of Spitzer, Amy Pucket, and Dan Pucket did not unreasonably and vexatiously multiply the proceedings in this case.  See Armstrong, 163 F.R.D. at 302-04 (awarding sanctions under § 1927 when the attorney repeatedly instructed the witness not to answer questions that did not involve privilege, stated objections that were adopted by the deponent, restated questions to clarify them, and conferred with the witness).

School District also seeks sanctions pursuant to Fed. R. Civ. P. 37(a)(4) for the costs and attorneys' fees required to bring the motions to compel answers to questions posed during the deposition of Spitzer, Amy Pucket, and Dan Pucket.  Rule 37(a)(4) requires the court to award sanctions when a motion to compel is granted unless "the opposing party's nondisclosure, response, or objection was substantially justified, or that other circumstances make an award of expenses unjust."  Once again, the court finds that sanctions are inappropriate.  The School District's motions to compel were granted in part and denied in part, and thus, the court may, but is not required to, apportion the costs and expenses of bringing the motion to compel.  See Fed. R. Civ. P. 37(a)(4)(C); see also Carlton v. Union Pac. R.R. Co., No. 8:05CV293, 2006 WL 2220977, at *10 (D. Neb. Aug. 1, 2006) (awarding no sanctions when motion to compel was granted in part and denied in part).  The court finds that School District's attorneys and plaintiffs' attorneys are equally culpable for the protracted, contentious discovery that has occurred in this case.  Both sides have refused to comply with discovery requests, resulting in the other side prevailing, at least in part, in a motion to compel.  As a result, the court finds that justice requires each side to bear there own expenses incurred in bringing the motions to compel ruled upon in this order.  See Village of Kiryas Joel Local Dev. Corp. v. Ins. Co. of N. Am., No. 90 Civ. 4970 (JFK), 1991 WL 41667, at *5 (S.D.N.Y. Mar. 21, 1991).

Finally, the court refuses to exercise its discretion and appoint a discovery referee.  The discovery deadline has passed.  The only remaining discovery is that permitted pursuant to this order.  As a result, the court finds that a discovery referee would be a needless waste of resources.

## IV.   Amended Pleadings

School District seeks leave of the court to amend its pleadings to file a third-party complaint adding new parties and new claims against Beth Spitzer, Anthony Picarello, and the Becket Fund.  It also seeks leave to amend its answer to add affirmative defenses of waiver and estoppel.

### A.   Leave to File Third-Party Complaints

As a general matter, the Federal Rules of Civil Procedure "are usually liberally construed to permit parties to amend pleadings, add additional parties and to similarly control the pace of litigation." Bradford v. DANA Corp., 249 F.3d 807, 809 (8th Cir. 2001).  A stricter standard applies, however, when a party seeks to amend a pleading or add a party after the deadline imposed by the court's scheduling order.  See id.  According to Fed. R. Civ. P. 16(b), the court's scheduling order can only be amended "upon a showing of good cause and by leave of the district judge . . . ." See also Rahn v. Hawkins, 464 F.3d 813, 822 (8th Cir. 2006).  "The primary measure of good cause is movant's diligence in attempting to meet the order's requirements." Id. " '[T]he existence or degree of prejudice to the other party opposing the

35

modification' and other factors may also affect the decision." Bradford, 249
F.3d at 809 (quoting Johnson v. Mammoth Recreations, Inc., 975 F.2d 604,
609 (9th Cir. 1992)).  The court has discretion whether to allow leave to amend
past the deadline in the scheduling order.  Id.

Here, the deadline for amending pleadings and adding parties was
August 29, 2003.  (Docket 24).  School District did not move for leave to assert
the third-party complaints until September of 2006, over three years past the
court's deadline.

School District suggests that it has shown good cause because it did not
learn of the facts that support its third-party complaint until it recently
deposed Beth Spitzer.  The court questions the veracity of this assertion.
Even if true, however, the court refuses to exercise its discretion and let
School District assert a third-party complaint because it would substantially
prejudice plaintiffs.  This case is over three-and-one-half years old.  Discovery
is closed and the motions deadline has passed.  There are three pending
motions for summary judgment.  Undoubtedly, third-party defendants would
want to engage in discovery regarding the issues asserted in the third-party
complaint.[6]  This would further delay this case and prejudice plaintiffs.

_____

[6] School District asserts that no additional discovery would be needed as
a result of the third-party claims.  The court disagrees.  Even assuming that
School District does not intend to engage in additional discovery, the third-
party defendants likely would.  For instance, in response to the deceit claim,
the third-party defendants may need additional discovery to determine whether

In sum, the court finds that School District has not established good cause for attempting to implead new parties over three years after the court's deadline. See Smith v. Tenet Healthsystem SL, Inc., 436 F.3d 879, 887 (8th Cir. 2006) (affirming denial of leave to amend complaint to add a new party, which would require additional discovery, eleven months after the court's amendment deadline and after discovery had closed). As a result, School District's motions for leave to file a third-party complaint against Beth Spitzer, Anthony Picarello, and the Becket Fund are denied. This ruling moots plaintiffs' motion to strike second amended third-party complaint against Beth Spitzer and motion to strike second amended third-party complaint against Anthony Picarello and the Becket Fund.

### B.    Amend Answer

School District also seeks leave to amend its answer to assert the affirmative defenses of waiver and estoppel. School District alleges that these defenses apply because Spitzer, while acting on behalf of plaintiffs, requested that the School Board pass an official policy denying busing to Bethesda students rather than continuing to unofficially deny busing.

---

School District relied on Spitzer's statement when the School Board passed a motion to deny busing to Bethesda students. See Guthmiller v. Deloitte & Touche, LLP, 699 N.W.2d 493, 498 (S.D. 2005) (discussing the elements of deceit).

"A district court can refuse to grant leave to amend a pleading only where it will result in 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment.'" Dennis v. Dillard Dep't Stores, Inc., 207 F.3d 523, 525 (8th Cir. 2000) (quoting Foman v. Davis, 371 U.S. 178 (1962)).  In addition to delay, the party opposing the motion to amend must also show unfair prejudice.  Id.  While plaintiffs are able to show delay, they do not meet their burden of showing that they are unfairly prejudiced by the proposed amendment.  And there is no evidence that the motion to amend was made in bad faith, for a dilatory motive, or after repeated failures to cure deficiencies by amendments previously allowed.  The issue of futility will be addressed by the court on summary judgment.  The court hereby grants School District leave of court to amend its answer and plaintiffs leave of court to move for summary judgment on the issues of waiver and estoppel by **January 18, 2007.**

Based on the foregoing, it is hereby

ORDERED that School District's motion (Docket 213) to compel answers to questions posed during the deposition of Beth Spitzer, Amy Pucket, and Dan Pucket is granted in part and denied in part as described herein.

38

IT IS FURTHER ORDERED that School District's motion (Docket 213) for sanctions is denied.

IT IS FURTHER ORDERED that School District's motions (Docket 213, Docket 249) to redepose Beth Spitzer are granted. The scope of the deposition is limited as described herein.

IT IS FURTHER ORDERED that School District's motion (Docket 213) to redepose Amy Pucket and Daniel Pucket is denied.

IT IS FURTHER ORDERED that School District's second motion (Docket 249) to compel answers to questions posed during the deposition of Beth Spitzer is granted in part and denied in part as described herein.

IT IS FURTHER ORDERED that School District's third motion (Docket 249) for sanctions is denied.

IT IS FURTHER ORDERED that School District's motion (Docket 249) appointing a discovery referee is denied.

IT IS FURTHER ORDERED that School District's motion (Docket 242) to file a third-party complaint against Beth Spitzer is denied.

IT IS FURTHER ORDERED that School District's motion (Docket 270) to file a third-party complaint against Anthony Picarello, individually, and the Becket Fund is denied.

IT IS FURTHER ORDERED that School District's motion (Docket 294) to amend answer is granted.

IT IS FURTHER ORDERED that plaintiffs' motion for summary judgment on waiver and estoppel defense is due by **January 18, 2007**.

IT IS FURTHER ORDERED that plaintiffs' motion (Docket 226) to compel production of documents is granted in part and denied in part as described herein.

IT IS FURTHER ORDERED that plaintiffs' motion (Docket 226) to redepose Vern Hagedorn is granted.  The scope of the deposition is limited as described herein.

IT IS FURTHER ORDERED that plaintiffs' motion (Docket 272) to compel production of documents is granted in part and denied in part as described herein.

IT IS FURTHER ORDERED that plaintiffs' motion (Docket 289) to strike School District's second amended third-party complaint against Beth Spitzer, or in the alternative, for leave to file sur-reply is denied as moot.

IT IS FURTHER ORDERED that plaintiffs' motion (Docket 296) to strike School District's amended third-party complaint against the Becket Fund and Anthony Picarello, or in the alternative, for leave for file a sur-reply is denied as moot.

Dated December 19, 2006.

BY THE COURT:


/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE